UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEWAY MENGISTU, | Case No. CV 10-5227 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

**I. SUMMARY**

On July 21, 2010, plaintiff Neway Mengistu ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 3, 2010 Case Management Order, ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On May 8, 2007, plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance Benefits. (Administrative Record ("AR") 14, 113, 115). Plaintiff asserted that he became disabled on May 6, 2006,[2] due to chronic/acute asthmatic bronchitis, severe nausea, severe migraine headaches, a very weak heart and a severe bladder problem. (AR 14, 152). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a medical expert and a vocational expert on May 13, 2009. (AR 26).

On July 21, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 14, 24). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: chronic/acute asthmatic bronchitis, diabetes, hypertension, chemical worker's lung, a fractured ankle and hyperlipidemia (AR 16); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 17); (3) plaintiff retained the residual functional capacity to perform medium

///
///

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] Plaintiff initially asserted that he became disabled on February 16, 1993, but changed his onset date to May 6, 2006 at the administrative hearing. (AR 14, 152).

work,[3] but must avoid concentrated fumes, odors, dusts, gasses and poorly ventilated areas (AR 18); (4) plaintiff could perform his past relevant work as a security guard (AR 23); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. (AR 22).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

///

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

| | | |
|---|---|---|
| 1 | (3) | Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. |
| | (4) | Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five. |
| | (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's

credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

### 2. Pertinent Facts

Beginning in 1993, Dr. Garland Dodoo, a physician at Health Care Institute Medical Group, treated plaintiff for symptoms stemming from plaintiff's exposure to several toxic chemicals in approximately 1991 to 1993 (*i.e.*, migraine headache, persistent nausea, respiratory difficulty, anxiety). (AR 264, 268, 323).

In progress notes dated August 22, 2007, Dr. Dodoo, stated that plaintiff's symptoms "responded to [treatment with] Pepcid, Atrovent and Amytriptylline." (AR 323). Dr. Dodoo noted that, although plaintiff still had symptoms, they were "not as frequent as in the past." (AR 323).

On September 19, 2007, Dr. Kristof Siciarz, a state-agency physician, performed an internal medicine evaluation of plaintiff which included a physical examination. (AR 307). Dr. Siciarz observed that plaintiff's chest appeared symmetric, and respiratory auscultation revealed normal excursions without any appreciable wheezing, rhonchi, or rubs. (AR 309). A pulmonary function test

revealed only "mild restrictive component" and "[n]o change with bronchodilator challenge." Based on his examination of plaintiff, Dr. Siciarz opined that plaintiff (i) could push, pull, lift and/or carry 50 pounds occasionally and 25 pounds frequently; (ii) stand and/or walk six hours in an eight-hour work day; (iii) had no restrictions in sitting; and (iv) should avoid exposure to dust, pollen, cigarette smoke and noxious elements. (AR 311).

On April 16, 2008, Dr. Michael Gurevitch, one of plaintiff's treating physicians, performed a spirometry test and concluded that the test showed breathing restriction. Dr. Gurevitch prescribed Advair, and planned a follow up breathing test. (AR 19) (citing Exhibit 10F at 3, 4 [AR 389-90]). In June 5, 2008 treatment notes, Dr. Gurevitch observed that after treatment plaintiff had remarkably improved, noting specifically that treatment with Advair appeared to have been "quite effective as each visit shows progressive improvement, most notable in the small airways." (AR 19) (citing Exhibit 13F at 5, 6 [AR 407-08]).

Dr. Allison Diamant was the attending physician at UCLA Medical Center when plaintiff was hospitalized from March 30, 2009 to April 3, 2009 after fracturing his right foot. (AR 351-86). UCLA Medical Center records from plaintiff's hospitalization reflect the following: A chest x-ray showed that plaintiff's lungs were essentially clear with no pleural effusion or significant bony abnormality. Although there was evidence of suboptimal inspiration, there was no acute cardiopulmonary abnormalities. An adult dobutamine stress echo report reflected normal wall motion without evidence of dobutamine-induced ischemia. During a stress treadmill dobutamine test plaintiff denied chest pain and shortness of breath. A pulmonary function test or spirometry reflected moderately reduced FVC and FEV1, normal FEV1/FVC ratio, normal FEF 25-75 with moderately reduced lung volumes, moderately reduced TLC and mildly reduced DLCO. (AR 20) (citing Exhibit 9F at 5, 12 [AR 354, 361]). An echocardiogram reflected
///

normal left ventricular size, wall thickness, wall motion and systolic function. (AR 20) (citing Exhibit 9F at 9 [AR 358]).

### 3. Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of his subjective complaints. (Plaintiff's Motion at 2-9). The Court disagrees.

First, in assessing credibility, an ALJ may properly rely on a plaintiff's unexplained failure to request treatment consistent with the alleged severity of his symptoms. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); see Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (lack of treatment and reliance upon nonprescription pain medication "clear and convincing reasons for partially rejecting [claimant's] pain testimony"); Fair, 885 F.2d at 604 (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained). Here, the ALJ concluded that, apart from plaintiff's treatment in 1993 for his chemical exposure and in 2009 for his ankle fracture, the medical records reflect that plaintiff had not sought treatment for his impairments "as frequently as one would expect if [plaintiff's] symptoms were as limiting as alleged." (AR 22). Plaintiff points to nothing in the medical evidence which reflects that he sought treatment for his subjective symptoms more than on a sporadic basis over the years.[4]

Second, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's daily activities. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's

---

[4] As respondent notes, the case law cited by petitioner does not support petitioner's suggestion that the ALJ was required to inquire whether plaintiff could explain the failure to request treatment consistent with the alleged severity of his symptoms.

8

testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). For example, the ALJ noted that plaintiff lives alone, that plaintiff has been able to keep up with his own personal grooming, cooking, and shopping, and that he uses public transportation.[5] (AR 22) (citing Exhibits 8E [AR 178-90], 7F [AR 335-38], 8F [AR 339-49]).

Finally, an ALJ may discredit a plaintiff's subjective symptom testimony in part based on conflicts with objective medical evidence. See Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). Here, contrary to plaintiff's allegations of disabling limitations, the ALJ found that the objective medical evidence reflects only mild exertional limitations which were sufficiently managed by plaintiff's medication. (AR 22). As the ALJ noted, the opinions of Dr. Siciarz based on an independent examination of plaintiff also conflict with plaintiff's allegations of significant functional limitations. While plaintiff contends that the objective medical evidence actually supports his credibility, this Court will not second-guess the ALJ's reasonable interpretation that it does not, even if such evidence could give rise to inferences more favorable to plaintiff.

Accordingly, a remand or reversal on this basis is not warranted.

---

[5]Citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001), plaintiff argues that the mere fact that he was able to carry out such daily activities is not a clear and convincing reason for discrediting his testimony. (Plaintiff's Motion at 6). Plaintiff's reliance on the holding in Vertigan, however, is misplaced. (Plaintiff's Motion at 6). In Vertigan, the ALJ discredited plaintiff's subjective complaints of pain based solely on plaintiff's daily activities which, the Ninth Circuit noted, did not consume a "substantial" part of plaintiff's day." Vertigan, 260 F.3d at 1049-50. The Ninth Circuit concluded that, considering the insubstantial nature of plaintiff's daily activities, evidence of plaintiff's "constant quest for medical treatment and pain relief" refuted the ALJ's adverse credibility finding. Id. at 1050. Here, unlike in Vertigan, the ALJ gave several clear and convincing reasons for discrediting plaintiff's subjective complaints, including, as noted above, plaintiff's unexplained failure to request treatment consistent with the alleged severity of his symptoms.

**B. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physicians**

Plaintiff contends that the ALJ improperly rejected the opinions of plaintiff's treating physicians, Drs. Diamant and Dodoo.[6] (Plaintiff's Motion at 9-18). The Court finds that a remand or reversal on this basis is not warranted.

**1. Pertinent Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[7] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

///

---

[6]Although the status of Dr. Diamant as a treating physician appears to be disputed, this Court assumes, without deciding that Dr. Diamant qualifies as such as doing so does not alter the outcome of this matter.

[7]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn, 495 F.3d at 632 (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas, 278 F.3d at 957 (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

### 2. Dr. Diamant

#### a. Pertinent Facts

On April 30, 2009, Dr. Diamant completed a Residual Functional Capacity Questionnaire (Physical) form in which she opined that plaintiff: (i) could sit continuously for no more than 45 minutes, and "currently" could not stand at all (apparently due to plaintiff's fractured foot); (ii) could stand/walk less than two hours and sit about two hours in an eight hour work day; (iii) would need to take unscheduled, 15-20 minute breaks every 2-3 hours; (iv) would need to have his

legs elevated with prolonged sitting; (v) could lift and/or carry no more than 10 pounds occasionally; (vi) could reach with his arms only five percent of an eight hour work day; (vii) must avoid all exposure to extreme cold/heat, high humidity, chemicals, solvents/cleaners, soldering fluxes, cigarette smoke, perfumes, fumes, odors, dusts and gases; and (viii) would likely be absent from work more than three days per month. (AR 396-402).

In a letter dated May 22, 2009, Dr. Diamant summarized the objective findings from clinical and laboratory testing conducted during plaintiff's 2009 hospitalization at UCLA Medical Center, and opined that plaintiff was "disabled" at that time due to "likely diagnosis of bronchiolitis obliterans secondary to the prior chemical exposure to [plaintiff's] lungs in 1993." (AR 420-22).

**b.     Discussion**

Dr. Diamant's opinion that plaintiff was essentially incapable of performing even sedentary work is contradicted by the treatment records from plaintiff's hospitalization at UCLA Medical Center. As noted above, the ALJ determined that the objective medical findings in such records reflect only mild functional limitations from plaintiff's conditions which had been sufficiently managed by medication. (AR 20-21). Moreover, as the ALJ correctly notes, neither Dr. Diamant's April 30 form nor her May 22 letter points to any other objective medical findings that would support limitations beyond those already accounted for in the ALJ's residual functional capacity assessment. (AR 20-21, 396-402, 420-22). Therefore, to the extent the ALJ rejected Dr. Diamant's opinions, she properly did so for clear and convincing reasons based on substantial evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (A discrepancy between a physician's notes and recorded observations and opinions and the physician's assessment of limitations is a clear and convincing reason for rejecting the opinion.); see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's

treatment notes); cf. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ need not accept a treating physician's opinions that are conclusory and brief, or unsupported by clinical findings or physician's own treatment notes). Although plaintiff disagrees with the ALJ's interpretation of the medical evidence, the Court will not second-guess the ALJ's reasonable conclusions.

Moreover, the ALJ properly rejected Dr. Diamant's opinions in favor of the conflicting opinions of Dr. Siciarz, the state-agency examining physician, Dr. Rosa Halpern, the state-agency reviewing physician, and Dr. Harvey Alpern, the testifying medical expert – each of whom found no limitations beyond those already accounted for in the ALJ's residual functional capacity assessment. (AR 26-27, 33, 272-79). The opinion of Dr. Siciarz was supported by his independent examination of plaintiff, and thus, even without more, constituted substantial evidence upon which the ALJ could properly rely to reject the treating physician's opinions. See, e.g., Tonapetyan, 242 F.3d at 1149 (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinions of the state agency reviewing physician and the testifying medical expert also constitute substantial evidence supporting the ALJ's decision since they are consistent with the examining physician's opinions and underlying independent examination, as well as the other medical evidence in the record. See Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"); Morgan, 169 F.3d at 600 (testifying medical expert
///
///

opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it").

Accordingly, a remand or reversal on this basis is not warranted.

### 3. Dr. Dodoo

#### a. Pertinent Facts

In a letter dated May 5, 2008, Dr. Dodoo opined that "[plaintiff's] history and test results suggest that he currently has incapacitating respiratory symptoms which are likely to deteriorate with age." (AR 394).

On May 1, 2009, Dr. Dodoo completed a Residual Functional Capacity Questionnaire (Physical) form in which he opined that plaintiff: (i) had no pain associated with his conditions; (ii) had symptoms which would frequently interfere with attention and concentration, and had a severe limitation in his ability to deal with work stress; (iii) could continuously sit for no more than one hour, and stand at one time for only 20 minutes; (iv) could stand/walk about two hours and sit about four hours in an eight hour work day; (v) would need to take unscheduled, 15 minute breaks twice a day; (vi) could lift and/or carry less than 10 pounds frequently, and no more than 10 pounds occasionally; (vii) had no significant limitations in repetitive reaching, handling or fingering; (viii) must avoid all exposure to extreme cold/heat, high humidity, chemicals, solvents/cleaners, soldering fluxes, cigarette smoke, perfumes, fumes, odors, dusts and gases; and (ix) would likely be absent from work more than three days per month. (AR 411-17). Dr. Dodoo also opined that "[s]ignificant emotional factors [exacerbated plaintiff's] anxiety, depression [and] migraine headaches and increased shortness of breath which impair [plaintiff's] overall functional ability," and thus render plaintiff "disabled." (AR 417).

#### b. Discussion

The May 1, 2009, form Dr. Dodoo submitted contained essentially check-the-box opinions with no adequate explanations for findings that brought the

doctor to conclude plaintiff was disabled. (AR 411-17). As the ALJ noted, Dr. Dodoo referenced Dr. Gurevitch's April 16, 2008 clinical findings which showed plaintiff with "impaired lung function," but made no mention of Dr. Gurevitch's findings in June 5, 2008 that plaintiff had significantly improved with treatment. (AR 19, 21) (citing Exhibit 13F at 5, 6 [AR 407-08]). As the ALJ also noted, Dr. Dodoo provides no detailed reasoning for his environmental restrictions on plaintiff. Nor does Dr. Dodoo provide any clinical findings (either his own or from another doctor) to support his opinions as to limitations from plaintiff's mental conditions. (AR 21). Moreover, plaintiff's treatment history with Dr. Dodoo and the Health Care Institute Medical Group reflects lengthy periods of time where plaintiff apparently sought no treatment at all. (See AR 239-67, 268-306, 322-29, 330-34, 389-91, 405-08, 441-44). The ALJ reasonably concluded that such a "sparse" treatment history is not as extensive as might be expected if plaintiff suffered from the severe impairments reflected in Dr. Dodoo's opinions. Moreover, for the reasons discussed above, the conflicting opinions of the state-agency examining and reviewing physicians and the testifying medical expert (AR 26-27, 33, 272-79) constitute substantial evidence supporting the ALJ's rejection of Dr. Dodoo's opinions. Tonapetyan, 242 F.3d at 1149; Andrews, 53 F.3d at 1041; Morgan, 169 F.3d at 600. Therefore, the ALJ properly rejected Dr. Dodoo's conclusory and unsupported opinions for clear and convincing reasons based on substantial evidence. See Batson, 359 F.3d at 1195 (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings); Connett, 340 F.3d at 875 (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); Tonapetyan, 242 F.3d at 1149; see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that the ALJ properly rejected doctors' opinions because they were check-off reports that did not contain any explanation of the

bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

Accordingly, a remand or reversal on this basis is not warranted.[8]

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 19, 2011

                                          /s/
                         Honorable Jacqueline Chooljian
                         UNITED STATES MAGISTRATE JUDGE

---

[8] While plaintiff's request for review was pending before the Appeals Council, plaintiff submitted a medical report dated September 1, 2009 from Dr. Gurevitch ("September 1 Report") for inclusion in the record. (AR 1, 440-44). Plaintiff suggests that Dr. Gurevitch's findings in the September 1 Report reflect limitations which corroborate Dr. Dodoo's opinions. (Plaintiff's Motion at 16-17). Since the Appeal's Council did not consider the September 1 Report when it denied review, this Court declines to consider such evidence. See Lingenfelter v. Astrue, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007); Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir.) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review."), cert. denied, 531 U.S. 1038 (2000). In any event, a remand is not warranted based on the new evidence because plaintiff fails to demonstrate that the findings in the September 1 Report would support limitations beyond those already accounted for in the ALJ's residual functional capacity assessment. See Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (To warrant a remand, plaintiff must show that new evidence is material to the ALJ's disability determination).